# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ADAM JOVANOVIC, | Case No. 2:17-cv-02520-APG-PAL |
| Petitioner, | |
| v. | **TEMPORARY RESTRAINING ORDER** |
| SANJA KRSTIC, | |
| Respondent. | |

Petitioner Adam Jovanovic has filed a Verified Complaint under The Hague Convention on International Child Abduction seeking the return of his minor son, who allegedly is being illegally kept in the United States by respondent Sanja Krstic. Jovanovic also has filed a Petition for Warrant in Lieu of a Writ of Habeas Corpus. ECF No. 9. Krstic apparently has not yet been served with the papers filed in this case.

## I. BACKGROUND[1]

Jovanovic and Krstic were married in 2013 in Belgrade, Serbia. ECF No. 1 at 3. A child (M.J.) was born to them in January 2014. The couple divorced in February 2016 and both Jovanovic and Krstic were given custody rights. Jovanovic, Krstic, and M.J. continued to reside in Serbia. In October 2016, Jovanovic agreed to allow Krstic to take M.J. to the United States to visit her family. Krstic assured Jovanovic that she and M.J. would return to Serbia by the end of 2016. Krstic and M.J. have not returned to Serbia and Krstic has informed Jovanovic that she intends to remain in the United States with M.J.

---

[1] The facts set forth in this Order are taken from Jovanovic's Verified Complaint and Petition. ECF No. 1. I presume them to be true for purposes of this Order, but Jovanovic remains responsible for proving them.

On September 29, 2017, Jovanovic filed his Verified Complaint asserting a cause of action for Wrongful Retention under The Hague Convention on International Child Abduction. Jovanovic seeks the return of M.J. to Serbia. Jovanovic also filed a Petition for Warrant in Lieu of a Writ of Habeas Corpus to have M.J. taken from Krstic and held at Child Haven to ensure that he remains in Nevada until the Court can resolve this matter. ECF No. 9. That remedy is too aggressive at this point in the case. I am concerned that putting M.J. (who may not speak English) in custody away from any parent or relative may unnecessarily traumatize him. Instead, I will enter this Temporary Restraining Order prohibiting Krstic from removing M.J. from Nevada until I resolve the case.

**II. LEGAL STANDARD**

The International Child Abduction Remedies Act (ICARA) expressly authorizes a court to "take or cause to be taken measures under Federal or State law, as appropriate, . . . to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a). Federal Rule of Civil Procedure 65(b) allows issuance of a temporary restraining order without notice if facts contained in a "verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. . . ." A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

The Court may issue a temporary restraining order if a movant establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citation omitted).

## III. DISCUSSION

Jovanovic has established each of the four prongs of the *Winter* analysis. Additionally, because of the risk that Krstic may flee this jurisdiction with the child, it is necessary to enter this Temporary Restraining Order without notice to her. At this stage of the litigation, I am not determining that M.J. should be returned to Serbia. Rather, I conclude that a Temporary Restraining Order is justified to preserve the status quo pending a hearing and my ruling on the Petition. Accordingly, I will temporarily restrain Krstic from concealing or removing M.J. from Nevada until I rule on the Petition.

**A. Likelihood of Success on the Merits**

The Hague Convention is a multilateral international treaty on parental kidnapping to which the United States and Serbia are signatories. The goal of the Hague Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague

3

Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, preamble, T.I.A.S. no. 11670 (hereinafter Hague Convention). The objects of the Convention are: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." *Id.*, Art. 1. The Hague Convention applies where a child has been removed or retained away from his or her habitual residence in breach of the custody rights that the petitioner (parent) was exercising at the time of the wrongful removal or wrongful retention. *Id.*, Art. 3.

The United States has implemented the Hague Convention by enactment of the ICARA, 42 U.S.C. §§ 11601-11611. Under ICARA, state and federal district courts have concurrent jurisdiction over claims arising under the Convention. 42 U.S.C. § 11603(a). ICARA vests courts with the authority to order the return of wrongfully removed or retained children. *See* 42 U.S.C. § 11603. At bottom, the Hague Convention and ICARA seek to return children to their country of habitual residence for the resolution of any custody dispute, and to avoid international forum shopping. *Riley v. Gooch*, No. 09-cv-01019-PA, 2009 WL 3401013, at *2 (D. Or. Oct. 21, 2009) (citing *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000)); *Lalo v. Malca*, 318 F. Supp. 2d 1152, 1154 (S.D. Fla.2004); *Journe v. Journe*, 911 F. Supp. 43, 46 (D.P.R. 1995)).

An ICARA hearing is not a custody hearing. *See Blondin v. Dubois*, 189 F.3d 240, 245 (2nd Cir. 1999) (under ICARA, a district court has "the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim"); Hague Convention, Art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination

on the merits of any custody issue."). Rather, an ICARA proceeding merely determines which nation should hear the underlying custody claim. *Blondin*, 189 F.3d at 245.

In order to prevail on his Verified Complaint, Jovanovic will have to establish that (1) M.J. was removed or retained away from the country in which he was habitually resident immediately before the removal or retention; (2) that removal or retention was in breach of Jovanovic's custody rights as provided by the law of the country of M.J.'s habitual residence; and (3) at the time M.J. was removed or retained, Jovanovic was actually exercising his rights of custody. Hague Convention, Art. 3.

### 1. Removal or Retention of M.J.

The first prong requires Jovanovic to establish that the child was removed or retained away from the country of his habitual residence. *See* Hague Convention, Art. 3(a). It appears indisputable that Krstic has retained the child in the United States for several months. Thus, Jovanovic need only establish that Serbia was M.J.'s "habitual residence" immediately before Krstic's retention in the United States.

Although the Hague Convention and ICARA do not define "habitual residence," the Ninth Circuit provided an analytical framework in *Mozes v. Mozes*, 239 F.3d 1067, 1071-1081 (9th Cir. 2001). First, in order to acquire a new habitual residence, there must be a "settled intention to abandon the one left behind." *Id*. at 1075.

> [A child] may become habitually resident even in a place where it was intended to live only for a limited time . . . if the child's prior habitual residence has been effectively abandoned by the shared intent of the parents. Where there is no such intent, however, a prior habitual residence should be deemed supplanted only where "the objective facts point unequivocally" to this conclusion.

*Id.* at 1082 (citation omitted).

5

Here, the facts in Jovanovic's Verified Complaint adequately demonstrate that he will likely succeed in establishing that M.J. habitually resided in Serbia immediately preceding his retention in the United States. Jovanovic states he and Krstic lived with M.J. in Serbia since the child was born and they were still living in Serbia when Krstic chose to retain the child in the United States after visiting family. Jovanovic does not share Krstic's intent to abandon Serbia as M.J.'s habitual residence.

### 2. Breach of Jovanovic's Custody Rights

The second prong of Jovanovic's Wrongful Retention claim requires him to prove that Krstic's retention of M.J. in the United States was a breach of Jovanovic's custody rights as provided by Serbia. *See* Hague Convention, Art. 3(a). The Serbian divorce judgment gave Jovanovic some custodial or visitation rights over M.J. ECF No. 8 at 10-12; ECF No. 10 at 26-27. The retention of M.J. in the United States is violating his right to custody and visitation. Accordingly, Jovanovic has shown that he will likely succeed in establishing the second prong of his Wrongful Retention cause of action.

### 3. Jovanovic's Actual Exercise of his Custody Rights

Finally, Jovanovic must establish that, at the time M.J. was removed or retained, Jovanovic was actually exercising his rights of custody. *See* Hague Convention, Art. 3(b). Jovanovic adequately demonstrates that he was exercising his rights of custody at the time Krstic retained the child in the United States, and that Jovanovic would have continued to exercise his rights of custody but for Krstic's allegedly wrongful retention of the child in the United States. ECF No. 8 at 12. Accordingly, Jovanovic has shown that he will likely succeed in establishing this prong.

////

### B. Likelihood of Irreparable Harm in the Absence of the Requested Relief

Given the risk that Krstic could further conceal the location of M.J. or take him outside of Nevada, Jovanovic will likely be irreparably harmed if I do not maintain the status quo.

### C. The Balance of Equities Tips in Jovanovic's Favor

The risk of Krstic secreting away M.J. before the resolution of this case outweighs any injury to Krstic or M.J. that may result from ordering M.J. to stay in this judicial district. First, this Order merely maintains the status quo by ordering that Krstic and M.J. remain in this district during the pendency of this action. Second, it appears that Krstic has been living in this district with her sister and family for several months. Thus, this Order will not impose a hardship on her. Accordingly, the balance of equities tips in favor of Jovanovic and supports the issuance of this temporary restraining order.

### D. The Issuance of the TRO Benefits the Public's Interest

"The public interest analysis for the issuance of [injunctive relief] requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted). I find no public interest that would be injured by the issuance of this temporary order.

## IV. CONCLUSION

IT IS HEREBY ORDERED that:

1. Petitioner Adam Jovanovich shall immediately serve respondent Sanja Krstic with this Order, as well as all other papers filed in this case.

2. Respondent Sanja Krstic, her agents and relatives, and all others acting in concert with her, are HEREBY ENJOINED from taking the child (M.J.), or allowing the child to be taken, outside the State of Nevada without express written authorization from this Court. The Court will not hesitate to order the arrest of any person who violates this injunction.

3. Respondent Sanja Krstic, her agents and relatives, and all others acting in concert with her, are FURTHER ENJOINED from concealing M.J. or changing his physical place of residence without express written authorization from this Court.

4. Respondent Sanja Krstic shall deliver to the United States Marshal, for safekeeping, any passports for M.J. that are in Krstic's possession, custody, or control, and shall further notify the United States Marshal if Krstic knows of any person having possession of such a passport. The United States Marshal is authorized to receive and to hold any such passport pending further instructions from this Court.

IT IS FURTHER ORDERED that the Motion for Scheduling of an Expedited Hearing **(ECF No. 8) is GRANTED**. By separate order, I am setting a case-management conference for **October 12, 2017, at 11:00 a.m.** in Courtroom 6C of the Lloyd D. George United States Courthouse at 333 Las Vegas Blvd. South Las Vegas, NV 89101. At that time, I will hear any arguments for extending, modifying, or dissolving this injunction. Any written submissions should be filed with the Clerk and electronically served no later than 12:00 p.m. on October 11, 2017.

IT IS FURTHER ORDERED that this Order shall expire at 5:00 p.m. on October 12, 2017 unless extended for good cause.

DATED THIS 5th day of October, 2017 at 3:00 p.m.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE